IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG LECADRE, | : | Civil No. 1:21-CV-00997 |
| Plaintiff, | : | |
| v. | : | |
| PENNSYLVANIA OFFICE OF THE ATTORNEY GENERAL, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a motion to dismiss Defendant Attorney General Josh Shapiro from this action. (Doc. 16.) For the reasons stated herein, the motion will be granted.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Craig S. LeCadre ("LeCadre") initiated this action on June 3, 2021, against Defendants Pennsylvania Office of the Attorney General ("OAG"), Josh Shapiro ("Shapiro"), Bruce Beemer ("Beemer"), Kirsten Heine ("Heine"), Rebecca Franz ("Franz"), Robert Drawbaugh ("Drawbaugh"), Eric Norman ("Norman"), Shari McGraw ("McGraw"), and John/Jane Does (collectively, "Defendants"). (Doc. 1.) In his complaint, LeCadre alleges that Defendants "treated him unfavorably in the terms and conditions of his employment because of his race (African American) and then retaliated against him when he complained to the

1

Equal Employment Opportunity Commission." (Doc. 1, p. 1.)[1] LeCadre was hired by the OAG in 2011 as a Special Agent in the Insurance Fraud Section and, by 2013, was assigned to the Office of Professional Responsibility. (*Id.* ¶¶ 14–15.) Around 2014, the OAG investigated its employees for "widespread racist and lewd emails" being sent on the Commonwealth computer system, which included some of LeCadre's co-workers. (*Id.* ¶¶ 16–17.)

Also in 2014, Beemer recruited LeCadre to lead a sensitive investigation into alleged corruption of a public official in which Drawbaugh was LeCadre's supervisor. (*Id.* ¶¶ 18–19.) LeCadre alleges that Defendants would not provide all the necessary resources he needed to investigate this public official. (*Id.* ¶ 20.) Even though the investigation was high profile, the OAG assigned "new and inexperienced" Deputy Attorney Generals to the case, including Franz. (*Id.* ¶ 21.) The complaint details interactions between LeCadre, Franz, and Drawbaugh, which LeCadre submit were steps to cover up the public official's "racist paraphernalia" and "white supremacist ideas." (*Id.* ¶¶ 22–29.)

In 2015, Drawbaugh and Deputy Chief David Peiffer met with LeCadre and demoted him without warning from his managerial position to a Special Agent II. (*Id.* ¶¶ 30–31.) In 2017, LeCadre complained to the Ethics Department and Chief of Criminal Investigations William Kelly about the high-profile investigation and

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

the "racially insensitive remarks and the unfair treatment" related to that investigation. (*Id*. ¶¶ 32–33.) LeCadre alleges that nothing was done regarding his complaints. (*Id.* ¶ 34.)

In January 2019, Norman became LeCadre's supervisor. (*Id.* ¶ 35.) LeCadre alleges that Norman and Heine falsely claimed that his emails were insubordinate in May 2019. (*Id.* ¶ 37.) Following a meeting with LeCadre, Norman, and Heine, wherein LeCadre submits that Heine "stormed out," Heine contacted McGraw, the Human Resources Director, because LeCadre was a "persistent problem." (*Id.* ¶¶ 38–42.) On September 4, 2019, McGraw requested that LeCadre be examined for his fitness for duty by Louis Laguna, Ph.D. ("Dr. Laguna") using language that LeCadre alleges was false and misleading. (*Id.* ¶¶ 43–44.) LeCadre was placed on administrative leave pending his evaluation on September 11, 2019. (*Id.* ¶ 46.) Dr. Laguna subsequently issued a report finding that LeCadre was fit for duty. (*Id.* ¶ 47.)

LeCadre filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on December 26, 2019. (*Id.* ¶ 48.) On June 22, 2020, LeCadre received a "satisfactory" performance rating in his 2018–2019 evaluation from Norman, while the three prior evaluations were "commendable" ratings. (*Id.* ¶¶ 49–50.) LeCadre details additional facts related to these evaluations as to Norman and Drawbaugh. (*Id.* ¶¶ 50–55.)

As to Shapiro, the defendant moving for dismissal, LeCadre asserts that Shapiro was elected Attorney General of Pennsylvania in 2017 and is currently in that position.  (*Id.* ¶ 6.)  Shapiro is not specifically named in any other paragraph of LeCadre's complaint.  Notwithstanding the lack of factual allegations regarding Shaprio, LeCadre pleads four claims against all Defendants, including Shapiro: Count I for disparate treatment and retaliation in violation of Title VII; Count II for violation of 42 U.S.C. § 1981; Count III for retaliation for First Amendment speech in violation of 42 U.S.C. § 1983; and Count IV for civil conspiracy as to all individual Defendants in violation of 42 U.S.C. § 1985.  (*Id.* ¶¶ 56–123.)

On August 6, 2021, the court approved the parties' stipulation to dismiss Defendant Beemer from this action.  (Doc. 9.)  The OAG, Heine, Franz, Drawbaugh, Norman, and McGraw answered LeCadre's complaint on September 2, 2021.  (Doc. 15.)  The same day, Shapiro filed the instant motion to dismiss with a brief in support following on September 15, 2021.  (Docs. 16, 17.)  LeCadre timely filed his opposition brief on October 12, 2021, and Shapiro filed a reply on October 26, 2021.  (Docs. 22, 23.)  Thus, this motion is ripe for review.

## JURISDICTION AND VENUE

The court has federal question jurisdiction over the complaint as it asserts claims under federal law.  *See* 28 U.S.C. § 1331.  Venue is appropriate because all

actions detailed in the complaint occurred within the Middle District of Pennsylvania.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## DISCUSSION

Shapiro moves to dismiss the complaint against him because there is no personal liability under Title VII, LeCadre fails to allege any personal involvement

by Shapiro as to the § 1983 claim, there is no viable claim against state actors under § 1981, and LeCadre fails to allege any facts that Shapiro formed an agreement or performed an overt act in the § 1985 conspiracy claim. (Doc. 17.) The court will address each count in turn.

### A. Count I for disparate treatment/retaliation in violation of Title VII will be dismissed with prejudice.

Relying on *Sheridan v. E.I. Dupont de Nemors & Company*, 100 F.3d 1061 (3d Cir. 1996), Shapiro argues that Count I must be dismissed because there is no individual liability under Title VII. (Doc. 17, p. 5.) In opposition, LeCadre submits that Shapiro misrepresents *Sheridan*'s holding because the limitation of Title VII does not apply to Shapiro as he is the Attorney General, not an employee of the Office of the Attorney General. (Doc. 22, pp. 7–9.) In his reply, Shapiro asserts that while the parties actually agree on *Sheridan*'s holding, LeCadre wrongfully concludes that Shapiro, as the Attorney General, is his employer because of his title. (Doc. 23, pp. 2–5.) Rather, LeCadre's "employing entity" is the Office of the Attorney General. (*Id.*) Further, to the extent that LeCadre argues that Shapiro can be sued in his official capacity, Shapiro asserts that this argument fails because "official capacity suits are not available under Title VII where the employer is named as a defendant." (*Id.* at 4 (quoting *Stroud v. Susquehanna Cnty.*, No. 3:17-cv-2183, 2018 WL 3727388, at *3–4 (M.D. Pa. Aug. 6, 2018)).)

In *Sheridan*, the Third Circuit held that individual employees may not be held liable under Title VII. 100 F.3d at 1077–78. This is true regardless of that employee's job title and managerial position. *See, e.g.*, *Spalla v. Elec. Mfg. Servs. Grp.*, No. 1:16-cv-821, 2017 WL 569178, at *3–4 (M.D. Pa. Feb. 13, 2017) (collecting cases and holding that shareholders and corporate officers may not be held liable under Title VII); *Lozosky v. Keystone Bus. Prods., Inc.*, 2015 WL 4727073, at *8 (M.D. Pa. Aug. 10, 2015) (finding that sole shareholder and owner of company could not be held liable in his individual capacity). As to official capacity liability, this court has held that "official capacity suits are not available under Title VII where the employer is named as a defendant." *Stroud*, 2018 WL 3727388 at *3 (quoting *Thourot v. Monroe Career & Tech. Inst.*, No. 14-1779, 2016 WL 6082238 (M.D. Pa. Oct. 17, 2016)).

While the parties agree on the law that controls on this issue, LeCadre is insistent that "Shapiro is not an employee of the Office of Attorney General; he is *the* Attorney General," *i.e.* the employing entity. (Doc. 22, p. 8.) The court is not convinced. LeCadre cites to no authority that the elected Attorney General is an employing entity in the same sense as the OAG. Further, LeCadre acknowledges that he was employed by the OAG. (*See* Doc. 1, ¶ 65.)

Following *Sheridan*, LeCadre cannot pursue a Title VII claim against Shapiro. Additionally, to the extent that LeCadre is pursuing this claim against

7

Shapiro in his official capacity, the claim is properly dismissed because the OAG is named as a defendant in this case and any claim against Shapiro would be duplicative. Thus, the court will grant Shapiro's motion to dismiss as to Count I with prejudice since he cannot pursue this claim as a matter of law.[2]

### B. Count III for violation of LeCadre's First Amendment rights under Section 1983 will be dismissed with prejudice.

Shapiro argues that the complaint fails to plead any facts to support an inference that Shapiro had any personal involvement in the alleged First Amendment claim. (Doc. 17, pp. 5–7.) Because personal involvement—not vicarious liability—is necessary for this claim, Shapiro asserts that mentioning his name once in the description of the parties' section and otherwise lumping him in with "all defendants" is insufficient to state a claim. (*Id.* at 6–7.) In other words, Shapiro maintains that the complaint fails to provide any reasonable inferences that can satisfy the *Iqbal* pleading standard. (*Id.*)

In opposition, LeCadre submits that he is not pursuing a supervisory liability claim against Shapiro. (Doc. 22, p. 9 n.1.) Rather, he argues that Shapiro is a policymaker who "failed to act and was recklessly indifferent to the foreseeable

---

[2] In a footnote within the reply brief, Shapiro notes that LeCadre's Title VII claim should be dismissed with prejudice against the other individual defendants as well. Although not fully briefed by the parties, the court finds this appropriate given Third Circuit precedent that forecloses individual and official capacity claims in this context. *See Sheridan*, 100 F. 3d at 1077–78; *Stroud*, 2018 WL 3727388 at *3. Thus, Count I will be dismissed with prejudice against all defendants except the OAG.

risk that [LeCadre's] constitutional rights would be egregiously violated." (*Id.* at 10–13.) LeCadre relies on *Natale v. Campden County Correctional Facility*, 318 F.3d 575 (3d Cir. 2003), for this theory of liability and asserts that the policies propounded by Shapiro and the OAG regarding "an ethical commitment to diversity" are "meaningless" and "illusory." (*Id.*) Lastly, LeCadre argues that Shapiro is liable "under § 1983 as a policymaker who either promulgated a policy that black voices . . . be sidelined in favor of more 'palatable' white voices *or* as a policymaker who failed to take [sic] act affirmatively despite the obvious need for action to control his agents." (*Id.* at 12–13.)

In his reply, Shapiro argues that LeCadre conceded his § 1983 claim, but has pivoted to a *Monell* claim for ineffective policies and customs. (Doc. 23, pp. 5–6.) However, *Monell* claims only apply to municipalities or governmental units, thus, LeCadre's § 1983 claim fails regardless of the theory pursued. (*Id.*)

To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1998); *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). For a defendant to be held liable for violation of a plaintiff's civil rights, the defendant must have personal involvement in the alleged wrongs. *Rode v.*

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A complaint, therefore, must plead a defendant's personal involvement in order to survive a motion to dismiss, which can be accomplished by alleging "the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 222 (3d Cir. 2015).

A municipality can be liable for constitutional injuries under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *see also Natale*, 318 F.3d at 583–84 (detailing "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the government entity for whom the employee works, thereby rendering the entity liable under § 1983"). The key to *Monell* liability is that it is restricted to municipalities and local government units, and does not apply to state officials in their official capacity. *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990).

Here, LeCadre concedes that he does not base his § 1983 claim on personal involvement or supervisory liability. (Doc. 22, p. 9 n.1.) On this issue, the court notes that LeCadre has not pled any personal involvement of Shapiro and the § 1983 claim fails for that reason. Furthermore, LeCadre cannot pursue a claim against Shapiro under a policy or custom theory as described in *Monell* and *Natale*

10

because Shapiro is not a governmental entity. Accordingly, Shapiro's motion to dismiss will be granted as to Count III and this count will be dismissed with prejudice.

### C. Count II for violation of § 1981 will be dismissed with prejudice.

Shapiro argues that Count II should be dismissed with prejudice because a stand-alone § 1981 claim cannot be brought against a state actor such as Shapiro. (Doc. 17, pp. 7–8.) LeCadre submits that his § 1981 claim is viable because it is brought in conjunction with a § 1983 claim. (Doc. 22, p. 13.)

The court agrees with Shapiro. Section 1981 does not create a private right of action, nor does it provide a remedy against a state actor. *McGovern v. City of Phila.*, 554 F.3d 114, 116–17 (3d Cir. 2009); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989). Because Count II now stands alone, and no one disputes that Shapiro is a state actor, LeCadre's § 1981 claim will be dismissed with prejudice.

### D. Count IV for civil conspiracy in violation of § 1985 will be dismissed without prejudice.

For this final count in LeCadre's complaint, Shapiro argues that LeCadre fails to plead any facts that show Shapiro committed an "overt act" or that he spoke or formed any agreement with the other Defendants. (Doc. 17, pp. 8–13.) He further argues that "there is nothing on which an agreement can even be *inferred*." (*Id.* at 11.) In opposition, LeCadre submits that a conspiracy may be "inferred

from the circumstances," and he has provided "more than conclusory allegations that a conspiracy existed." (Doc. 22, pp. 14–16.) LeCadre argues that Shapiro is "deemed to be knowledgeable about the culture of the workplace in his office," and despite that knowledge, refused to remedy LeCadre's allegations of discrimination. (*Id.* at 15–16.) Thus, the allegations pled "make it plausible that Defendant Shapiro is liable for reckless indifference to Plaintiff's statutory and constitutional rights." (*Id.* at 16.)

Section 1985(3) allows "an action to be brought by one injured by a conspiracy formed for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *Davis v. Samuel*, 962 F. 3d 105, 113 (3d Cir. 2020) (quoting *Faber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006)). In pleading a claim under § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Faber*, 440 F.3d at 134 (citations omitted). To survive a motion to dismiss, a complaint must "identify with particularity the conduct violating [a plaintiff's] rights, the time and place of these actions, and the people responsible therefore." *Tarapchak v. Lackawana Cnty.*, 173 F. Supp. 3d 57, 73 (M.D. Pa. 2016) (citations

12

omitted). Further, there must be "some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity." *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 695 (M.D. Pa. 2015) (citation omitted). "A plaintiff cannot rely on subjective suspicions and unsupported speculation." *Id.* (citing *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)). However, "[b]ecause direct evidence of a conspiracy is rarely available, the existence of a conspiracy may be inferred from the circumstances." *Stoneroad v. Johnson*, No. 2020 WL 2107665, at *14 (M.D. Pa. Apr. 6, 2020) (citing *Capogrosso v. The Sup. Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009)).

In this case, LeCadre fails to meet even the most basic elements of a § 1985 conspiracy claim as to Shapiro. There is no act alleged that Shapiro took in furtherance of the conspiracy, nor can a conspiracy involving Shapiro be inferred from any of the allegations in the complaint. LeCadre simply relies on "subjective suspicions and unsupported speculation" as to Shapiro's involvement in the alleged conspiracy. *See Lewis*, 153 F. Supp. 3d at 695. Thus, the motion to dismiss will be granted as to Count IV, but LeCadre will be permitted to amend the complaint as to this count since a § 1985 conspiracy claim against Shapiro is not foreclosed by law.

## CONCLUSION

For the reasons stated herein, Shapiro's motion to dismiss will be granted.

An appropriate order will follow.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Court Judge<br>
Middle District of Pennsylvania

Dated: September 26, 2022